FILED
2014 Jul-24 PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **VANDORA MAPLES ANDERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:13-CV-1322-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | |

---

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Vandora Maples Anderson brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Ms. Anderson timely pursued and exhausted her administrative remedies available before the Commissioner. The

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

case is thus ripe for review under 42 U.S.C. § 405(g).[2] For the following reasons, the court **AFFIRMS** the Commissioner's decision.

### STATEMENT OF THE CASE

Ms. Anderson was 54 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 154 *with* Tr. 22. She has a high school education. Tr. 159. Her past work experience includes employment as a tire builder and inspector. Tr. 159. She claims she became disabled on April 15, 2004, due to fibromyalgia, osteoarthritis in her knees and back, acid reflux, and depression. Tr. 158.[3] Her last period of work ended on that date. *Id.*

On April 19, 2010, Ms. Anderson protectively filed a Title II application for a period of disability and DIB. Tr. 22. She also protectively filed a Title XVI application for SSI on that date. *Id.* On August 20, 2010, the Commissioner initially denied these claims. *Id.* Ms. Anderson timely filed a written request for a hearing on October 4, 2010. *Id.* The ALJ conducted a hearing on the matter on November 16, 2011. *Id.* On December 29, 2011, he issued his opinion concluding Ms. Anderson was not disabled and denying her benefits. Tr. 31. She timely petitioned the Appeals

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3]On November 8, 2011, Ms. Anderson amended her disability onset date to March 25, 2007. Tr. 153.

Council to review the decision on February 10, 2012. Tr. 14. On May 16, 2013, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Anderson filed a Complaint with this court on July 16, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on October 31, 2013. Doc. 7. Ms. Anderson filed a supporting brief (doc. 11) on December 13, 2013, and the Commissioner responded with her own (doc. 12) on January 14, 2014.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no

presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy

in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.   Ms. Anderson met the insured status requirements of the Social Security Act through September 30, 2010.

2.   She had not engaged in substantial gainful activity since April 15, 2004, the alleged disability onset date.

3.   She had the following severe impairments: osteoarthritis; mild degenerative disc disease, (DDD); fibromyalgia; hyperthyroidism; status/post left-knee surgery; and carpal tunnel.

4.   She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.   She had the residual functioning capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). She was restricted to performing the following postural activities on an occasional basis only – climbing, kneeling, stooping, crouching, and crawling. She should avoid exposure to workplace hazards, such as moving machinery and unprotected heights.

6.   She was unable to perform any past relevant work.

7.   She was born on [redacted], and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability date.

8.   She had at least a high school education and was able to communicate in English.

9.   Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework

supported a finding that s/he was "not disabled," whether or not she had transferable job skills.

10.     Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.     She had not been under a disability, as defined in the Social Security Act, from April 15, 2004, through the date of this decision.

Tr. 24-31.

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Anderson urges this court to reverse the Commissioner's decision to deny her benefits on two grounds: (1) the ALJ relied on the opinion of a State Agency single decisionmaker in formulating his RFC determination, and (2) the ALJ failed to obtain a medical source opinion from a physician formally evaluating her functional abilities. Doc. 11 at 6-11. The court finds neither argument persuasive and

instead concludes that substantial evidence supported the ALJ's decision to deny Ms. Anderson benefits.

## I.    The ALJ Did Not Reversibly Err in Crediting the State Agency Decisionmaker.

Ms. Anderson first complains that the ALJ credited the opinion of Richard Schmidt, a State Agency "single decisionmaker" ("SDM") disability specialist. Because Mr. Schmidt is not an acceptable medical source under the Regulations, Ms. Anderson argues that the ALJ should not have deferred to Mr. Schmidt's opinion. Doc. 11 at 7. Instead, the ALJ mistakenly characterized Mr. Schmidt as a medical consultant and afforded "great weight" to his vocational assessment. Tr. 29. Thus, according to Ms. Anderson, there was no medical source opinion on record that adequately evaluated her functional abilities. Doc. 11 at 8. In light of this fact, she contends that the ALJ compounded his error by not obtaining such an opinion. *Id.*

These complaints do not justify reversal. The court in *Malone v. Colvin*, 5:12-CV-514-LSC, 2013 WL 4502075 (N.D. Ala. Aug. 22, 2013), recently explained the SDM system as it operates in Alabama:

> Federal law permits states to test modifications to the disability determination process. *See* 20 C.F.R. § 404.906. As part of an experiment to expedite the processing of applications, SDMs may make initial disability determinations in Alabama without the signature of a medical consultant. *See* Modifications to the Disability Determination Procedures, Extension of Testing of Some Disability Redesign Features, 71 Fed. Reg. 45890, 2006 WL 2283653 (Aug.

> 10, 2006); 20 C.F.R. § 404.906 . . . It is the Commissioner's policy that SDM-
> completed forms are not opinion evidence and, upon appeal from an initial
> denial, are entitled no weight. *See* Program Operations Manual System
> (POMS) D1 24510.05, 2001 WL 1933365.

*Id.* at *4. As in this case, the ALJ in *Malone* had relied on a functional assessment of

the claimant offered by a non-examining State Agency SDM. *Id.* Indeed, the ALJ

there placed "significant" weight on that opinion and – as occurred here – erroneously

characterized the SDM as a physician. *Id.* Nevertheless, the *Malone* court found this

error harmless for two reasons:

- the ALJ's ultimate RFC determination was more restrictive than the SDM's opinion; and

- substantial record evidence – which the ALJ meticulously documented – supported the determination.

*Id.* (citing *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Castel v. Astrue*,

355 F. App'x 260, 265-66 (11th Cir. 2009) (unpublished) (concluding ALJ did not

err in referring to a report that may have been completed by a SDM where the ALJ

did not place great weight on the report, the report merely confirmed the objective

medical evidence, and thus any error was harmless); *Diorio v. Heckler*, 721 F.2d 726,

728 (11th Cir. 1983) (applying the harmless error doctrine to an ALJ's determination

in a social security case)). The court also did not fault the absence of any MSO in the

record. "[T]he Commissioner's regulations do not require the ALJ to base his RFC

finding to include such an opinion on an RFC assessment from a medical source. Therefore, the failure to include such an opinion at the State agency level does not render the ALJ's RFC assessment invalid." *Id.* at \*5 (quoting *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011)). Nor does the ALJ need to rely on a formal RFC assessment issued by a physician. *Id.* (citing *Langley*, 777 F. Supp. 2d at 1257-58 (citing *Green v. Comm'r of Soc. Sec.*, 223 F. App'x 915, 923-24 (unpublished) (11th Cir. 2007)).

The court finds this reasoning persuasive and that such considerations prevail in this case. The ALJ here incorrectly labeled Mr. Schmidt a medical consultant when he was not. Tr. 29. And, he wrongly afforded great weight to Mr. Schmidt's conclusion that Ms. Anderson could perform the full range of light work. *Id.* But, these were harmless errors for the same reasons identified in *Malone*. First, the ALJ did not accept Mr. Schmidt's determination wholesale. He instead added certain limitations to the RFC that reflected the particularities of Ms. Anderson's condition. The ALJ did this, importantly, "based on the <u>totality of evidence</u>" – that is, <u>not</u> exclusively on Mr. Schmidt's opinion. Tr. 29 (emphasis added).

Furthermore, the record substantially supported the ALJ's RFC determination. As noted above, he concluded that, despite her limitations, Ms. Anderson could still perform "less than the full range of light work" and prescribed certain postural

restrictions on her abilities. Tr. 26-27. The Regulations define light work in the following manner:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The ALJ arrived at this judgment after comprehensively reviewing Ms. Anderson's medical evidence. He recorded the various accidents and injuries she claimed to have suffered. He examined the treatment and progress notes her physicians submitted, including the results of diagnostic imaging tests she underwent. Finally, he reviewed assessments made of Ms. Anderson's impairments by Mr. Schmidt, Dr. Dwain E. Woode – who treated her for her hyperthyroidism – and her chiropractor, Greg Millar, DC, CCEP.[5]

Ms. Anderson alleged pain as the source of her disability. Tr. 45. The court will

---

[5]The ALJ assigned little weight to Dr. Millar's opinion that Ms. Anderson was permanently disabled because – among other reasons – chiropractors are not acceptable medical sources under the Regulations. Tr. 29. Ms. Anderson apparently does not contest this devaluation of Dr. Millar's opinion. Regardless, the ALJ's decision was appropriate. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) ("[T]he ALJ's decision to discount chiropractor Reckford's opinion was supported by substantial evidence for two reasons. First, Reckford is not considered an "acceptable source" and, thus, his opinion cannot establish the existence of an impairment.") (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)).

thus examine whether the ALJ properly evaluated Ms. Anderson's pain-based allegations under the prevailing standards in this Circuit. A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

•   Evidence of an underlying medical condition; and

•   Either:

    ▸   objective medical evidence confirming the severity of the alleged pain; or

    ▸   that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here was both explicit and convincing in explaining why he discredited Ms. Anderson's allegations regarding the disabling effects of her pain. He first conceded that there was objective evidence substantiating some of her alleged

medical conditions. Tr. 28. He then marshaled substantial evidence undermining Ms.

Anderson's claims as to the severity of her alleged pain and to the disabling effects

such pain ostensibly had on her. This evidence included the following facts:

- Progress notes dated October 13, 2009, from Dynamic Performance Physical Therapy reflected that her pain levels subsided after completing her round of therapy;

- Although she fractured her talus in a January 2010 motor vehicle accident, x-rays performed by the Orthopedic Center from (on or around) April 26, 2010, revealed that the talus had healed, and the Center accordingly ended her treatment;

- Medical records from Athens-Limestone Hospital related to her January 14, 2011, emergency room visit revealed that "she ambulated alone and without difficulty";

- An MRI performed by Village Healthcare dated June 28, 2011, on her spine did not show any abnormally-enhancing foci; and

- While Dr. Woode noted that she had a diffusely enlarged thyroid and suffered from fatigue and thryotoxicosis, she nevertheless had "full range of motion, no swelling or deformity . . . suffered no clubbing, cyanosis, or edema."

Tr. 28-29.

Altogether, the ALJ provided "such relevant evidence as a reasonable person

would accept as adequate to support [his] conclusion." *Bloodsworth*, 703 F.2d at

1239. While he mischaracterized the SDM here as a medical consultant and

erroneously credited his opinion, these were harmless errors. The ALJ did not rotely

rely on Mr. Schmidt's RFC determination. Instead, he crafted a more restrictive RFC that was suitably grounded in the record. The court thus finds his analysis satisfactory.

## II.   The ALJ Had No Further Duty to Develop the Record.

Ms. Anderson next argues that, because there was no MSO or RFC assessment by a physician on record, the ALJ should have ordered such an assessment by a medical expert. Doc. 11 at 9-10. She further suggests as an alternative that the ALJ could have conducted a supplemental hearing at which such an expert could have testified to her RFC. *Id.* at 10. By failing to do such, the ALJ supposedly failed his fundamental duty to develop the record. *Id.*

These claims are meritless. As a general matter, Social Security proceedings "are inquisitorial rather than adversarial.*" Sims v. Apfel*, 530 U.S. 103, 111 (2000). The ALJ thus has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). The ALJ's duty to "fully and fairly develop the record," *Coward v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981), exists whether or not the applicant is represented. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). When the claimant is unrepresented, however, the ALJ's duty is heightened. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). Ms. Anderson was legally represented

14

in his hearing below. Tr. 35. Thus, the ALJ had no <u>special</u> duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.*

Still, an ALJ must "develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, and to make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources when permission is given." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (unpublished) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).

The record shows that the ALJ here met these basic obligations. He documented Ms. Anderson's medical history dating back to at least 2006. Tr. 27. This review included recording her various accidents and the ramifications those misfortunes visited on her physical condition. The ALJ further elicited evaluations of her mental and physical healthy by State Agency personnel. He fielded diagnostic testing results concerning Ms. Anderson's ailments from her various health care providers over the years. The longitudinal nature of these tests – stretched, as they were, over several years – arguably allowed the ALJ to track whether Ms. Anderson's condition had progressively worsened. And, finally, he analyzed assessments

15

performed on Ms. Anderson by Dr. Woode and Dr. Millar, who were able to personally examine her.

Ms. Anderson's gravamen is that there was (and is) no formal MSO on record evaluating her functional capabilities. As has been shown, however, such a statement is not essential. *See Langley*, 777 F. Supp. 2d at 1258 ("[T]he law of this Circuit does not require[] an RFC from a physician.") (citing *Green*, 223 F. App'x at 922-24); *Johnson v. Astrue*, No. CA 11-0460-C, 2012 WL 1565644, at *11 (S.D. Ala. May 2, 2012) ("The Court need reject plaintiff's argument that the Commissioner, through the ALJ, cannot render an RFC assessment that is not supported by the medical opinion of a treating or examining medical source.") (citing *Green*, 223 F. App'x at 923-24). For this reason, the court rejects Ms. Anderson's argument that the ALJ here failed to develop the record.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separated order.

16

**DONE** and **ORDERED** this the 24th day of July, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge